UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**DECISION**
**and**
**ORDER**

——————————————————————

UNITED STATES OF AMERICA

v.                                          **06-M-1095**

ANDREW CHRISTOPHER CROWELL,

                    Defendant.

——————————————————————

UNITED STATES OF AMERICA

v.                                          **06-CR-291E(F)**

WILLIAM JOHN SWIAT,

                    Defendant.

——————————————————————

UNITED STATES OF AMERICA

v.                                          **06-CR-304S(F)**

BRUCE BREMER,

                    Defendant.

——————————————————————

APPEARANCES:            TERRANCE P. FLYNN
                        United States Attorney
                        Attorney for Government
                        ALLISON P. GIOIA, and
                        MARIE P. GRISANTI
                        Assistant United States Attorneys, of Counsel
                        138 Delaware Avenue
                        Buffalo, New York 14202

                        JOSEPH B. MISTRETT
                        FEDERAL PUBLIC DEFENDER
                        Attorney for Defendants
                        MARIANNE MARIANO
                        Assistant Federal Public Defender, of Counsel
                        300 Pearl Street

Suite 450
Buffalo, New York 14202

## JURISDICTION

Pursuant to 28 U.S.C. § 636(a)(2), the undersigned has original jurisdiction over
all matters pertaining to pretrial release pursuant to 18 U.S.C. § 3142.  The instant
matters are presently before the court on objections raised by Defendants to the
imposition of certain conditions of release pursuant to the Bail Reform Act of 1984, as
amended by the Adam Walsh Child Protection and Safety Act of 2006.

## BACKGROUND and FACTS

Defendant Andrew Christopher Crowell ("Crowell") is charged in a criminal
complaint filed September 11, 2006 (06-M-1095F, Doc. No. 1) ("the Crowell Complaint")
with knowingly transporting and shipping or attempting to transport and ship in
interstate or foreign commerce child pornography, in violation of 18 U.S.C. §§
2252(a)(1)(A) and (B), and 2252(b)(1).  Defendant William John Swiat ("Swiat") is
charged in a September 6, 2006 Indictment (06-CR-291E(F), Doc. No. 1) ("the Swiat
Indictment") with possession, receipt, and distribution of child pornography, in violation
of 18 U.S.C. §§ 2252A(a)(2)(B), and 2252A(a)(5)(B).  Defendant Bruce Bremer
("Bremer") is charged in a September 13, 2006 Indictment (06-CR-304S(F), Doc. No. 1)
("the Bremer Indictment"), with possession and distribution of child pornography in
violation of 18 U.S.C. §§ 2252A(a)(2)(B) and 2252A(a)(5)(B).  Based on the Complaint
and both the Swiat Indictment and Bremer Indictment ("the Indictments"), the
undersigned issued warrants for the arrests of Swiat, Crowell and Bremer

2

("Defendants").

At Defendant Crowell's initial appearance before the undersigned on September 27, 2006, Crowell was assigned counsel and released upon conditions imposed by the court pursuant to 18 U.S.C. § 3142 ("§ 3142"), as recommended by the court's Pretrial Service unit ("Pretrial Services"), including posting secured bail in the amount of $ 10,000, fully secured by cash or property, reporting to Pretrial Services within 24 hours of release, surrendering any passports to the Clerk of the Court, refraining from obtaining any new passport, restricting travel to the Central District of Illinois and the Western District of New York, submitting to a mental health evaluation and any treatment as approved by Pretrial Services, refraining from possessing a firearm, destructive device, or other dangerous weapons, and refraining from possessing or downloading any child pornography as defined under 18 U.S.C. § 2256, or any analogous state law.  September 29, 2006 Conditions of Release Order (06-M-1095F, Doc. No. 4) ("Crowell Release Order").  Pretrial Services' bail recommendations were not opposed by the Government, nor did the Government request Crowell be detained.

At Defendant Swiat's initial appearance before the undersigned on September 28, 2006, Swiat was assigned counsel and released to the third-party custody of his mother, Margaret Swiat, upon conditions imposed by the court pursuant to § 3142, including reporting to Pretrial Services within 24 hours of release, refraining from any use of alcohol, refraining from use or possession of any narcotic drug or other controlled substance, submitting to any testing by the Pretrial Services office for use of controlled substances, participating in substance abuse therapy and counseling approved by Pretrial Services, refraining from obstructing or tampering with the

3

efficiency and accuracy of any required prohibited substance testing, reporting within 72 hours to Pretrial Services any contact with any law enforcement personnel, including any arrest, questioning or traffic stop, continuing in mental health treatment, refraining from possessing or downloading any child pornography as defined under 18 U.S.C. § 2256, and providing the U.S. Probation Office advance notification of any computer automated services or any connected devices to be used during Swiat's term of supervision, with the U.S. Probation Office authorized to install any necessary application on Swiat's computer to assure compliance with these conditions, and Swiat's consent to cooperating with the U.S. Probation Office's random monitoring of Swiat's computer, connected devise and storage media usage.   September 28, 2006 Conditions of Release Order (06-CR-291E(F), Doc. No. 7) ("Swiat Release Order").  As with Crowell, the Government did not oppose Pretrial Services' recommended release conditions and did not seek Swiat's detention.

At Defendant Bremer's initial appearance before the undersigned on September 28, 2006, Bremer was assigned counsel and released upon conditions imposed by the court pursuant to § 3142, including reporting to Pretrial Services within 24 hours of release, refraining from any use of alcohol, refraining from use or possession of any narcotic drug or other controlled substance, submitting to any testing by the Pretrial Services office for use of controlled substances, participating in substance abuse therapy and counseling approved by Pretrial Services, refraining from obstructing or tampering with the efficiency and accuracy of any required prohibited substance testing, and not owning or accessing any computer, automated service, or connected devices. September 28, 2006 Conditions of Release Order (06-CR-304S(F), Doc. No. 4)

("Bremer Release Order").  Again, the Government concurred with Pretrial Services' bail recommendations and did not seek detention.

Thereafter, at the court's direction, upon becoming aware of the special release conditions required in these cases by the recently enacted Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 203, 120 Stat. 587, 613 (2006) ("the Adam Walsh Amendments" or "the Amendments"), Pretrial Services contacted defense counsel, Assistant Federal Public Defender Marianne Mariano ("Mariano"), and advised that the Adam Walsh Amendments, modifying the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* ("the Bail Reform Act"), applied to Defendants' mandating the additional conditions of release at issue.  As such, Pretrial Services recommended additional release conditions be imposed as directed by the Amendments on each Defendant including: (1) refraining from contact with minors absent the direct supervision of a responsible adult; (2) refraining from contact with the alleged victims, witnesses, or family of the victims or witnesses; (3) participating in a home confinement program and abiding by all requirements of the program, including electronic monitoring or other location verification system, the cost of which Defendant will be required to pay, either in whole or in part; and (4) submitting to a curfew restricting each Defendant to his residence.  At the court's request, Pretrial Services contacted defense counsel, Mariano, as to whether Defendants would voluntarily agree to the modification of their conditions of release and Defendants, through Mariano, advised they objected to the additional mandatory conditions on the ground the Amendments were unconstitutional and requested a hearing.

On October 19, 2006, Defendants orally challenged the proposed modification of

release conditions under the Adam Walsh Amendments as in violation of procedural due process, the separation of powers doctrine, and the Eighth Amendment's Excessive Bail Clause.  06-M-1095F, 06-CR-291E(F) and 06-CR-304S(F) October 19, 2006 Minute Entry.  The Government responded by requesting the court impose the conditions in accordance with the Amendments.  *Id*.  Defendants were directed to file a memorandum of law supporting their objections by October 25, 2006, and the Government was directed to file its response by October 31, 2006.  *Id*.  Accordingly, each Defendant filed a Memorandum of Law in support of the objections.  06-M-1095F, Doc. No. 11, filed October 25, 2006 ("Defendant Crowell's Memorandum" or "Defendants' Memorandum"); 06-CR-291E(F), Doc. No. 8, filed October 26, 2006 ("Defendant Swiat's Memorandum"); and 06-CR-304S(F), Doc. No. 7, filed October 25, 2006 ("Defendant Bremer's Memorandum").[1]  On October 31, 2006, at its request, the Government's deadline for filing its response was extended to November 6, 2006. October 31, 2006 Amended Briefing Order (06-M-1095F, Doc. No. 13; 06-CR-291E(F), Doc. No. 11; 06-CR-304S(F), Doc. No. 9).  On November 6, 2006, the Government filed the Government's Response to Defendant's Memorandum of Law Relating to the Amendments to the Bail Reform Act as Set Forth in the Adam Walsh Child Protection and Safety Act of 2006 (06-M-1095F, Doc. No. 14; 06-CR-291E(F), Doc. No. 13; 06-CR-304S(F), Doc. No. 11) ("Government's Response").[2]  Further oral argument was

---

[1] Although a separate Memorandum of Law was filed by each Defendant in support of their constitutional objections to the proposed additional pretrial release conditions, the legal discussions of all three Memoranda are essentially identical and, as such, in the interest of simplicity, the court cites only to Defendant's Crowell's Memorandum as Defendants' Memorandum.

[2] Similarly, although the Government filed a separate Memorandum of Law in response to the objections by each of the Defendants, except for some minor discrepancies pertaining to the facts of each

deemed unnecessary.

Treating the Government's opposition to the constitutional challenges raised by Defendants as motions for the imposition of pretrial release conditions ("the Government's motions"), the court finds that insofar as the Adam Walsh Amendments mandate the imposition of specific conditions for the pretrial release of criminal defendants accused of certain crimes, the Amendments violate procedural due process required by the Fifth Amendment, the separation of powers doctrine, and the Excessive Bail Clause of the Eighth Amendment.  The Government's motions are therefore DENIED.

## **DISCUSSION**[3]

Defendants challenge the congressional mandate, established by the Adam Walsh Amendment, that persons charged with certain crimes, including, as relevant, 18 U.S.C. §§ 2251(a)(1), 2252A(a)(2)(B) and 2252A(a)(5)(B), and for whom the court determines release under 18 U.S.C. § 3142(b) on personal recognizance or unsecured appearance bond is insufficient, may, under 18 U.S.C. § 3142(c), be released pending trial only upon certain conditions available under 18 U.S.C. § 3142(c)(1)(B), specifically: (1) electronic monitoring; (2) restrictions on personal associations, place of abode and travel; (3) avoiding contact with the alleged victim of the crime and potential witnesses;

case and the presentation of the arguments in a different order, the legal discussions of all three Memoranda are essentially identical and, thus, the references to the "Government's Response" are only the Memorandum filed by Defendant Crowell, also, as noted above, referred to as "Defendants' Memorandum".

[3] Based on the parties' memoranda and the court's research, the issue, to date, has not been addressed by any other court.

(4) regularly reporting to pretrial services; (5) complying with a specified curfew; and (6) refraining from possessing a firearm, destructive device or other dangerous weapon. 18 U.S.C. § 3142(c)(1)(B).

The crimes with which Defendants are charged, and to which the Adam Walsh Amendments pertain include knowingly transporting and shipping or attempting to transport and ship in interstate or foreign commerce child pornography.  Not only are the vulnerable young victims of such perverse crimes persuaded, or worse, forced to engage in sexual acts in order to create the child pornography targeted by the instant charges, the repulsive and abusive conduct represented by such pornography also damages the child victims' impressionable psyches, violating their basic human rights and dignity, and the right, in any civilized society, to be protected by adults against such abuses.  It is well known that such abuses are aggravated through the repeated disclosures of the images of the victimized children engaged in the acts.  In recognition of the serious harm resulting from such child pornography, Congress has recently enacted legislation, including the Adam Walsh Amendments, in an effort to reduce, in not eliminate, the perpetration of such crimes.  Nevertheless, the understandable legislative desire to suppress the potential to continue the misconduct by persons while on release pending trial on such charges does not allow Congress to override fundamental constitutional safeguards of the accused who, despite the reprehensible nature fo the offenses, continue to enjoy the presumption of innocence in setting conditions of release.  *See* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence.").

Based on the following, the court therefore finds that insofar as the Adam Walsh

Amendments mandate the imposition of certain pretrial release conditions for any defendant charged with offenses proscribed by the Amendments, the Amendments, as enacted, violate procedural due process required by the Fifth Amendment, the separation of powers doctrine, as well as the Eighth Amendment's prohibition against excessive bail and, as such, are unconstitutional.  Defendants' objections to the additional pretrial release conditions are accordingly sustained, and the Government's motions seeking to impose the release conditions as mandated by the Amendments are DENIED.

## 1.    Mandatory Release Conditions

Preliminarily, Defendants assert the Adam Walsh Amendments are not mandatory, which would render further consideration of the Amendments constitutionality moot, and requests a hearing to determine whether to impose the proposed additional release conditions.  Defendants' Memorandum at 5.  The Government does not concede the Amendments are discretionary and, in fact, argues to the contrary.   Government's Response at 9-10.

The plain language of the Adam Walsh Amendments establishes that Congress has attempted to mandate the imposition by the court of certain pretrial release conditions for those defendants charged with certain crimes.  Specifically, as relevant to the instant case, the Amendments state

> In any case that involves a minor victim under sections . . . 2252(a)(1) . . . 2252A(a)(1), 2252A(a)(2), . . . of this title, . . . *any release order shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified as subparagraphs (iv), (v), (vi), (vii), and (viii)*.

18 U.S.C. § 3142(c)(1) (italics added).[4]

The use of the word "shall" is unequivocal, *see McNeil v. United States*, 508 U.S. 106, 111 (1993) (holding word "shall" as used in Federal Tort Claims Act requiring action "shall not be instituted" until administrative remedies have been exhausted, unambiguously required such exhaustion as prerequisite to action), and, thus, does not support finding that the Amendments' provision regarding the imposition of the specified release conditions as anything other than imposing a mandatory duty upon the court.

Furthermore, despite the reference to "any release order," which could be construed as referring to orders of release on personal recognizance or unsecured appearance bond under 18 U.S.C. § 3142(b), it is a well-known canon of statutory construction that a statute should be construed so that no part of a statute is rendered inoperative. *Department of Revenue of Oregon v. ACF Indus., Inc.*, 510 U.S. 332, 340-41 (1994) (stating that the statutory interpretation urged by the state "would contravene the 'elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.'") (quoting *Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985)); *Bell v. Reno*, 218 F.3d 86, 91 (2d Cir.

---

[4]The specifically enumerated conditions include:

* * *

(iv) abide by specific restrictions on personal associations, place of abode, or travel;
(v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;
(vi) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;
(vii) comply with a specified curfew; [and]
(viii) refrain from possessing a firearm, destructive device, or other dangerous weapon . . . .

18 U.S.C. § 1342(c)(1)(B)(iv) - (viii).

2000) (same).  Given that mandating conditions for a defendant's release on personal recognizance would render meaningless the express authorization in 18 U.S.C. § 3142(b) permitting judicial court ordered release without conditions, the Adam Walsh Amendments must be read to only apply to release of a defendant on condition under 18 U.S.C. § 3142(c), which now permits release of a defendant charged with the instant offenses upon the conditions as authorized by 18 U.S.C. § 3142(c)(1)(B).  Moreover, had Congress intended to mandate the imposition of such conditions on releases both on personal recognizance, as well as on any conditions, the Amendments, which appear as a paragraph following subsection (c), would have been separately enumerated as 18 U.S.C. § 3142(d).  *See Bell*, *supra*, at 91 ("As a general matter, 'qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote.'" (quoting *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975))). Thus, where the court decides to release a defendant charged with the offenses targeted by the Amendments upon any condition, the Amendments mandate that the court also impose the additional conditions prescribed by the Amendments.

As the Amendments mandate the additional conditions, the court turns to Defendants' arguments that the imposition of the pretrial release conditions legislatively directed under the Adam Walsh Amendments as requested by the Government violates procedural due process, the separation of powers doctrine, and the Eighth Amendment's Excessive Bail Clause.

**2.      Eighth Amendment's Excessive Bail Clause**[5]

Defendants contend the imposition of the additional release conditions

mandated by the Adam Walsh Amendments violates the Eighth Amendment's

command that "excessive bail not be required."  Defendants' Memorandum at 11

(quoting U.S. Const. amend. VIII).  In opposition, the Government argues, without

authority, that the prohibition against excessive bail is intended "to guard against judicial

circumvention of legislative decisions to make certain offenses bailable" and was,

therefore not intended, according to the Government, "to limit legislative discretion in

deciding which offenses are subject to release and which are not."  Government's

Response at 26.  In support of this intriguing but, ultimately, unpersuasive argument,

the Government relies on the Supreme Court's finding in *United States v. Salerno*, 481

U.S. 739 (1987), that the Bail Reform Act provision permitting pretrial detention of a

defendant on the ground of likely future dangerousness did not violate the Excessive

Bail Clause at the Clause does not require pretrial release in a case where Congress

has authorized detention based on a compelling interest other than flight risk.  *Id.* at 26-

27 (citing *Salerno*, *supra*).  Contrary to the Government's assertion that *Salerno*

approved the notion that by including in the Bail Reform Act of 1984 authorization for

the detention of defendants accused of serious felonies, Congress thereby also

mandated detention of such defendants, a plain reading of both *Salerno* and the

detention provision of the Bail Reform Act, 18 U.S.C. § 3142(f), demonstrates only that

---

[5] Although the Eighth Amendment's Excessive Bail Clause is the third argument advanced by Defendants in support of their constitutional challenges to the Adam Walsh Amendments, the court discusses the scope of protective afforded by the Clause first because the finding of such a violation becomes an important predicate for the court's conclusions that the Amendments also violate the Fifth Amendment right to procedural due process and the separation of powers doctrine.

Congress created a rebuttable presumption that release pending trial should be denied as to such defendants in the absence of a showing that detention is not required to assure court appearances or for the community's protection.  18 U.S.C. § 3142(f); *Salerno*, *supra*, at 751.  Thus, *Salerno* provides no support for the Government's contention that the Bail Reform Act mandates pretrial detention and the constitutionality of such mandated bail decision was accepted by the Court in *Salerno*.

"The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty." *Stack v. Boyle*, 342 U.S. 1, 4 (1951).  As such, "the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant," and "[b]ail set at a figure higher than an amount reasonably calculated to fulfill this purpose is 'excessive' under the Eighth Amendment." *Id*. at 5.  Since deciding *Stack* in 1951, the Supreme Court has recognized that the function of bail, though limited, also includes ensuring the safety of the alleged victim and the community.  *See*, *e.g.*, *United States v. Montalvo-Murillo*, 495 U.S. 711, 714 (1990) (observing that among the considerations at a bail hearing are whether the defendant poses a risk of flight or a threat to the community).  Further, "[t]he only arguable substantive limitation of the [Excessive] Bail Clause is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, *supra*, at 754 (bracketed text added).  To determine whether the Amendments' prescribed release conditions are excessive, as that term appears in the Eighth Amendment, the court must compare such proposed conditions with the interests the government seeks to protect, including assuring the defendant's

appearance at trial and protecting the safety of the community.  *Id*.

Careful review of the text of the Bail Reform Act and the Court's reasoning in *Salerno*, however, reveals no support for the Government's expansive assertion of congressional power.  While the Bail Reform Act directs that on the Government's motion, the court must consider pretrial detention for particular offenses and defendants, despite the fact that as to certain offenses there is a presumption that detention be imposed, the Act ultimately leaves the question to judicial determination.  *See* 18 U.S.C. § 3142(f) ("*The judicial officer shall hold a hearing to determine* whether any condition or combination of conditions ser forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . .") (italics added); *see also* 18 U.S.C. § 3142(g) ("*the judicial officer shall, in determining whether there are conditions of release* that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning . . . .") (italics added).  Moreover, in *Salerno*, contrary to the Government's theory that the decision recognizes the power of Congress to mandate a particular pretrial release condition be imposed by the court, specifically, pretrial detention as was the issue in *Salerno*, the Supreme Court's upholding of the authorization of pretrial detention by the Bail Reform Act turned expressly on the fact that the statute does not require detention be imposed in every case based solely on the defined predicate offenses, set forth in the detention provision, filed against a particular defendant.  *Salerno*, *supra*, at 751-53.  Thus, the Government's premise that by sustaining the Bail Reform Act's authorization scheme for pretrial detention, the Supreme Court impliedly held that Congress retains

14

power, consistent with the Eighth Amendment, to mandate detention, as relevant, or a

particular release condition, depending on the charged crime, is without merit.

In the instant case, the court must compare the proposed additional conditions of

confinement, including that Defendants (1) refrain from contact with minors absent the

direct supervision of a responsible adult; (2) refrain from contact with the alleged

victims, witnesses, or family of the victims or witnesses; (3) participate in a home

confinement program and abiding by all requirements of the program, including

electronic monitoring or other location verification system, the cost of which each

Defendant will be required to pay, either in whole or in part; and (4) submit to a curfew

restricting each Defendant to his residence, with the interests the Government seeks to

protect by imposing such conditions, including protecting children from potential sexual

abuse and exploitation through the creation of pornographic images for distribution.

*See United States v. Boos*, 1207, 1211 (9th Cir. 1997) (observing legislative history of

18 U.S.C. § 2252 and citing  S. Rep. No. 95-438 at 40 (stating that 18 U.S.C. § 2252

"was born out of a 'deep and abiding concern for the health and welfare of the children

and youth of the United States,' and was enacted in order 'to protect and benefit such

children.'")).

Although the additional conditions sought to be required would further advance

the public's valid interest in protecting children from sexual abuse and exploitation

through the production or possession of such pornography and, as such, are not *per se*

violative of the Eighth Amendment's prohibition against excessive bail, the imposition of

such conditions on all defendants charged with certain crimes, regardless of the

personal characteristics of each defendant and circumstances of the offense, without

15

any consideration of factors demonstrating that those same legitimate objectives cannot be achieved with less onerous release conditions, will subject a defendant, for whom such conditions are, in the court's judgment, unnecessary, to excessive bail in violation of the Eighth Amendment. *See Salerno*, *supra*, at 754 (discussing the Eighth Amendment requires pretrial release conditions or detention "not be 'excessive' in light of the perceived evil" to be avoided); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (observing in context of challenge to pretrial release conditions, including secured appearance bond, and other, nonfinancial conditions, including intensive Pretrial Services supervision, travel restrictions, and surrender of passport and green card, that Eighth Amendment's Excessive Bail Clause requires careful review of pretrial release orders to ensure that person is released under least restrictive conditions); and *United States v. Haley*, 444 F.2d 61, 62 (8th Cir. 1971) (holding nonspecified release conditions sufficient to reasonably assure the accused's presence for trial, did not violate Excessive Bail Clause). *See also United States v. Scott*, 450 F.3d 863, 866 n. 5 (9th Cir. 2006) ("In some instances - when flight would be irrational, such as when the crime involves a minor traffic infraction - *any* amount of bail may be excessive because the bail amount would not serve the purpose of ensuring appearance in court to answer the charges." (italics in original)).

Here, the court, after affording both the Government and Defendants the opportunity at the bail hearing, conducted immediately following the initial appearances, to present any evidence as to each Defendant's risk of flight and threat posed to the community, including to minor children who might be sexually abused and exploited by pornographic photography, determined the additional conditions necessary to achieve

such objectives were less stringent than those required by the Adam Walsh Amendments.[6]  Thus, conditioning Defendants' releases on the proposed additional conditions as mandated by the Amendments would subject Defendants to excessive bail.  Accordingly, the proposed additional conditions of release sought to be imposed by the terms of the Amendments violate the Eighth Amendment's prohibition against excessive bail.

### 3.     Procedural Due Process

Defendants also argue that the Amendments "strip" the Bail Reform Act of certain constitutionally required procedural safeguards for defendants charged with certain criminal offenses, including the right to a determination by a neutral judicial officer as to what pretrial release conditions should be imposed.  Defendants' Memorandum at 6-9.  The Government maintains in opposition that because the Amendments do not preempt the judicial officer's initial determination whether Defendants should be released without conditions, rather than detained pending trial, the mandatory imposition of particular conditions on such release, without the exercise of judicial discretion, does not deprive Defendants of procedural due process.  Government's Response at 12-26.

"When government action depriving a person of life, liberty, or property survives substantive dues process scrutiny, it must still be implemented in a fair manner. . . .

---

[6] As noted, at Defendants' initial appearances, the Pretrial Services office did not recommend such additional conditions, and the Government, also apparently unaware of the Adam Walsh Amendments' requirements, acquiesced in those recommended conditions and, therefore, the court accepted the unopposed conditions.  Moreover, at no time did the Government move to detain any of the Defendants.

This requirement has traditionally been referred to as 'procedural due process.'"

*Salerno*, *supra*, at 746 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

"'[C]onsideration of what procedures due process may require under any given set of

circumstances must begin with a determination of the precise nature of the government

function involved as well as of the private interest that has been affected by the

government action.'" *Goldberg v. Kelly*, 397 U.S. 254, 263 (1970) (quoting *Cafeteria &

Restaurant Workers Union, etc. v. McElroy*, 367 U.S. 886, 895 (1961)).  Here, the

"government function" involved is the congressional mandate, enacted by the

Amendments, that defendants charged with certain specifically enumerated crimes, and

for whom release on personal recognizance is deemed insufficient to assure

appearance at trial or protect the community, not be released absent the imposition of

certain conditions, significantly restricting the defendant's interest, protected by the

Eighth Amendment, in remaining at liberty prior to trial.  Nevertheless, it is fundamental

that regardless of what interests are involved, "[t]he fundamental requisite of due

process of law is the opportunity to be heard.'" *Goldberg*, *supra*, at 267 (quoting

*Grannis v. Ordean*, 234 U.S. 385, 294 (1914)).

To sustain the Amendments' pretrial release conditions against a procedural due

process challenge, the court need only to find the procedures by which such pretrial

release conditions may be imposed are adequate as to at least those persons charged

with the crimes to which the Amendments apply.  *Salerno*, *supra*, at 751 (explaining that

to sustain a facial challenge to the procedures of the Bail Reform Act of 1984, the court

"need only find [the procedures] 'adequate to authorize the pretrial detention of at least

some [persons] charged with crimes.'" (quoting *Schall v. Martin*, 467 U.S. 253, 278

(1984) (bracketed text added)).  The Amendments fail this test as the legislatively

mandated pretrial release conditions at issue, to be imposed based solely on the

defendant's status as one accused of a certain crime, as well as one determined by the

court to be ineligible for release solely upon personal recognizance, ignores the

requirement for an independent judicial determination as to whether such additional

mandated conditions are needed to assure defendant's future appearance or to avoid a

danger to the community or an individual.

> In the legislative history of the Bail Reform Act of 1984, Congress observed that
>
> The primary purpose of the [Bail Reform Act of 1966] was to deemphazise the use of money bonds in the federal courts, a practice which was perceived as resulting in disproportionate and unnecessary pretrial incarceration of poor defendants, and to provide a range of alternative forms of release.  These goals of the [Bail Reform Act of 1966] - - cutting back on the excessive use of money bonds and *providing for flexibility in setting conditions of release appropriate to the characteristics of individual defendants* - - are ones which are worthy of support.

S. Rep. No. 98-225, 98th Cong., 1st Sess. 26 (1983), *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3187-88 (italics added).

Congress, while acknowledging that the 1966 Act did not necessarily achieve these

stated objectives, reiterated that in federal courts judges are vested with the authority to

make pretrial release decisions.  *Id*. at 3185.  In fact, one impetus for enacting the Bail

Reform Act of 1984 was "to address such problems as (A) the need to consider

community safety *in setting nonfinancial pretrial conditions of release*; [and] (B) the

need *to expand the list of statutory release conditions*. . . ."  *Id*. (italics and bracketed

text added).  Congress further observed that "[m]any of the changes in the bail reform

act [of 1984] . . . reflect the committee's determination that federal bail law must

address the alarming problem of crimes committed by persons on release *and must*

*give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released.*"  *Id.* (italics and bracketed text added).

The Adam Walsh Amendments' mandate imposing certain pretrial release conditions, based solely on the nature of the particular crimes charged, directly restricts the judicial discretion Congress sought to enlarge in both the Bail Reform Acts of 1966 and 1984, and which the Supreme Court has recognized as paramount to meet the requirements of procedural due process in the bail-setting process in federal courts. *See Salerno*, *supra*, at 751.  In particular, as discussed, Discussion, *supra*, at 12-13, one of the Bail Reform Act's most important changes was the addition of a requirement that arrestees charged with certain serious felonies be detained prior to trial if the government demonstrates, by clear and convincing evidence after an adversary hearing, that no bail or release conditions would reasonably assure the safety of any other person and the community.  *Salerno*, *supra*, at 741 (citing 18 U.S.C. § 3142(e) ("the detention law")).  In upholding the detention law against both substantive and procedural due process challenges, the Supreme Court observed that matters concerning pretrial release or detention are subject to judicial determination.  *Salerno*, *supra*, at 751 (stating that the detention "procedures by which a judicial officer evaluates the likelihood of future dangerousness are specifically designed to further the accuracy of that determination.").[7]

---

[7] In *Salerno*, The Supreme Court also observed that the procedure for ordering detention provided the defendant with numerous protections.  Specifically, the court noted that

Defendants have a right to counsel at the detention hearing.  18 U.S.C. § 3142(f).  They may testify in their own behalf, present information by proffer or otherwise, and cross-examine

Although Congress, in enacting the detention law, permitted defendants charged with certain serious felonies to be detained pending trial, the detention law does not mandate such detention in every eligible case but, rather, creates a *rubuttable presumption* that such defendants be detained, thereby placing the onus on the defendant to demonstrate that such detention is unnecessary.[8]  In contrast, in the instant case, the Amendments, by mandating certain pretrial release conditions, effectively create an irrebuttable presumption that the appearance at trial of arrestees charged with certain crimes, and the safety of the community, cannot be reasonably assured without such conditions.  At least one court of appeals has held that a similar irrebuttable presumption of danger to the community unduly interfered with judicial discretion in matters of pretrial release and did not pass constitutional muster under the Fourth Amendment.  *See United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006) (holding that a pretrial release condition imposed under state law requiring that the defendant consent to random drug testing and the searching of the defendant's home, at any time and without a warrant, and without any evidence that such conditions were

---

witnesses who appear at the hearing.  *Ibid*.  The judicial officer charged with the responsibility of determining the appropriateness of detention is guided by statutorily enumerated factors, which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. § 3142(g).  The Government must prove its case by clear and convincing evidence. § 3142(f).  Finally, the judicial officer must include written findings of fact and a written statement of reasons for a decision to detain. § 3142(i).  The Act's review provisions, § 3145(c), provide for immediate appellate review of the detention decision.

*Salerno*, *supra*, at 751-52.

[8] "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed [under certain criminal statutes] . . . ."  18 U.S.C. § 3142(e).

imposed as the result of findings made after any hearing, violated the Fourth

Amendment in the absence of any judicial determination that such condition was

necessary).[9]

> Specifically,

> [t]he assumption that [the defendant] was more likely to commit crimes than other members of the public, without an individualized determination to that effect, is contradicted by the presumption of innocence.  That an individual is charged with a crime cannot, as a constitutional matter, give rise to any inference that he is more likely than any other citizen to commit a crime if he is released from custody.  Defendant is, after all, constitutionally presumed to be innocent pending trial, and innocence can only raise an inference of innocence, not guilt.

*United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006) (bracketed text added).[10]

In *Scott*, the court further stated that a defendant's arrest on certain charges cannot,

without more, establish the defendant's dangerousness requiring the imposition of

certain pretrial release conditions; rather, the arrest merely triggers the ability to hold a

hearing during which such a determination may be made.  *See Scott*, *supra*, at 874 ("It

follows that if a defendant is to be released subject to bail conditions that will help

protect the community from the risk of crimes he might commit while on bail, the

conditions must be justified by a showing that defendant poses a heightened risk of

misbehaving while on bail.  The government cannot, as it is trying to do in this case,

short-circuit the process by claiming that the arrest itself is sufficient to establish that

the conditions are required.").

---

[9] Whether the pretrial release conditions challenged in *Scott* comported with procedural due process requirements or the Excessive Bail Clause was neither raised nor discussed.

[10] Defendants do not attack the Amendments on the ground that their application to their releases violates the presumption of innocence protected by due process.

Similarly, the Amendments, by mandating the imposition of certain pretrial release conditions, establish that an arrest on the stated criminal charges, without more, irrebuttably establishes that such conditions are required, thereby eliminating an accused's right to an independent judicial determination as to required release conditions, in violation of the right to procedural due process applicable to the instant proceedings under the Fifth Amendment.

**4.     Separation of Powers**

Defendants also contend the Amendments, by mandating certain pretrial release conditions, violate the constitutional doctrine of the separation of powers.  Defendants' Memorandum at 9-10.  The Government maintains that because the Amendments do not interfere with the initial judicial determination as to whether that defendant cannot be released pending trial on his personal recognizance, assuming that pretrial detention is not imposed, the Amendments' automatic imposition of specific release conditions does not violate the separation of powers doctrine.  Government's Response at 27-29.

"[W]ithin our political scheme, the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty."  *Mistretta v. United States*, 488 U.S. 361, 380 (1989) (upholding constitutionality of sentencing guidelines as amounting to neither an excessive delegation of legislative power, nor violating the separation of powers doctrine).  "Separation of powers was designed to implement a fundamental insight: Concentration of power in the hands of a single branch is a threat to liberty."  *Clinton v. City of New York*, 524 U.S. 417, 450 (1998).

Under the Constitution, in cases involving the Judicial Branch, the Supreme

Court has guarded the separation of powers doctrine by condemning any enactment that "impermissibly threatens the institutional integrity of the Judicial Branch." *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 851 (1986).  It is well-established that the separation of powers doctrine is violated when Congress prescribes a rule of decision for courts to follow without permitting courts to exercise their judicial powers independently, including the consideration of relevant evidence. *United States v. Klein*, 80 U.S. 128, 146-47 (1871).

In the instant case, by enacting the Adam Walsh Amendments, Congress has unambiguously imposed upon the federal judiciary a specific rule to be applied in determining the release of a defendant charged with specified offenses, thereby denying to the court the exercise of its judicial authority to set such conditions.  In so doing, Congress has commandeered the court into acting as its agent for purposes of imposing the targeted release conditions.  Since the Constitution was adopted, the setting of bail in federal criminal cases, with minor exceptions, has been recognized as representing the quintessential exercise of judicial power.  *See Stack v. Boyle*, 342 U.S. 1, 4-5 (1951) (stating that beginning with "the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a), federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail" and observing that the judiciary is charged with "the fixing of bail" for each defendant "based upon standards relevant to the purpose of assuring the presence of that deefndant.").[11]  As such, the Adam Walsh Amendments unmistakedly

---

[11]  "*And be it further enacted*, That for any crime or offence against the United States, the offender may, by any justice or judge of the United States, or by any justice of the peace, or other magistrate of any

and unduly encroach upon the judicial function, exclusively reserved by Article III of the Constitution to the Judicial Branch, in violation of the separation of powers established by the Constitution's framework.  Defendants' objections to the proposed release conditions of this ground are therefore also sustained.

## **CONCLUSION**

Based on the foregoing, the court find that insofar as the Adam Walsh Amendments mandate the imposition of specific conditions for each Defendant's pretrial release, the Amendments violate the Excessive Bail Clause of the Eighth Amendment, procedural due process guaranteed by the Fifth Amendment, and the separation of powers doctrine.  The Government's motions seeking to impose additional pretrial release conditions mandated by the Amendments are therefore DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      December 7, 2006
            Buffalo, New York

---

of the United States where he may be found agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested, and imprisoned or bailed, as the case may be, for trial before such court of the United States as by this act has cognizance of the offence." Judiciary Act of 1789, Chap. 20, § 33, 1 Stat. 73, 91, 1st Cong., 1st Sess. (1789) (italics in original; underlining added).  *See also* 18 U.S.C. § 3141(a) ("A judicial officer authorized to order the arrest of a person under section 3041 of this title before whom an arrested person is brought shall order that such person be released or detained, pending judicial proceedings, under this chapter.").